UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KRISTI FRADE,                 *
                                   *
Plaintiff,             *
                                   *     Civil Action No. 1:21-cv-11101-IT
v.                 *
                                   *
LUXOTTICA OF AMERICA INC.,   *
                                   *
Defendant.         *

MEMORANDUM AND ORDER

March 7, 2022

TALWANI, D.J.

Plaintiff Kristi Frade brings this action against her former employer Luxottica of America Inc. ("Luxottica") alleging harassment, discrimination, and retaliation under the Massachusetts Fair Employment Practices Act, Mass. Gen. Laws ch. 151B. Compl. [Doc. No. 1-1]. Pending before the court is Luxottica's Renewed Motion to Compel Arbitration and Stay Proceedings [Doc. No. 14]. The motion asks the court to order Frade's claims to arbitration and to stay all further proceedings pending arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*.

On February 3, 2022, the court issued a Memorandum [Doc. No. 25] addressing the Motion [Doc. No. 14]. The court found that Luxottica's Dispute Resolution Agreement was a valid contract covered by the FAA and that the dispute fell within its scope. The court also recognized that "[t]he user's selection of 'I wish to participate' . . . constitutes acceptance of the arbitration agreement," Mem. 9–10 [Doc. No. 25], and that "[i]f Frade is the person who logged into Eye Grow and accepted the term, she is bound to resolve her dispute through arbitration rather than the court," id. at 10–11. But the court could not determine whether the agreement was

enforceable where Frade disputed that she had consented to the agreement and "whether Frade [was] the person who accessed Luxottica's electronic platform and assented to the agreement" was a disputed fact that could not be resolved on the available record. Id. at 11.

On February 16, 2022, the court held an evidentiary hearing on this narrow factual question. Based on that evidentiary record and for the reasons explained below, Luxottica's Motion [Doc. No. 14] is DENIED.

## I.    Standard

"A written provision in . . . a contract [under the FAA] . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. However, "[t]he district court should not rule on [a] motion to compel arbitration until it resolves any factual disputes that require resolution before it can be determined whether the parties agreed to arbitrate." Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 176 (1st Cir. 2021); see also Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc., 795 F.2d 1111, 1115 n.7 (1st Cir. 1986) ("Under 9 U.S.C. § 4, where the making of the arbitration agreement is in issue, the district court is required to hold a hearing to decide disputed facts" before deciding the motion to compel arbitration (internal quotations omitted)).

An evidentiary hearing mandated under Section 4 "must be 'targeted' to the disputed contract-formation questions" necessary to resolving whether the parties agreed to arbitrate. Air-Con, 21 F.4th at 175–76 (quoting Boykin v. Fam. Dollar Stores of Mich., LLC, 3 F.4th 832, 844 (6th Cir. 2021)). The First Circuit has "decline[d] to mandate specific procedures" for the hearing and has left the conduct "to the discretion of the district court." Id. at 175. The burden to "affirmatively demonstrate the existence of a binding agreement to arbitrate" rests with the party moving to compel arbitration. Id. at 176.

## II.      Discussion

The material facts here are largely undisputed. The parties stipulate that "an individual . . . logged in [to iGrow] with Frade's six-digit number and password," opened the Luxottica Employee Guide and acknowledged having the opportunity to review the policies and agreements therein, including the Dispute Resolution Agreement. Stipulation ¶¶ 5–7 [Doc. No. 29]. They further stipulate that the individual "typed Frade's name into the electronic signature box" at the end of the Employee Guide and then chose to participate in the Dispute Resolution Agreement by selecting "I wish to participate" from the drop-down menu of choices. Id. at ¶¶ 8–12. The question before the court is therefore limited to whether Frade is that individual.

At the hearing, Frade affirmatively stated that she did not sign the Employee Guide or Dispute Resolution Agreement, that she did not select "I wish to participate" in the Dispute Resolution Agreement, and that she did not receive the agreements at issue as part of her employment by Luxottica. See also Frade Aff. ¶ 5 [Doc. No. 20-1]. The court finds for several reasons that Luxottica has failed to rebut this testimony.

First, the court finds that Frade testified credibly that she did not sign the Dispute Resolution Agreement. She also provided support for a plausible alternative. Frade stated that her then-supervisor Kevin Narciso may have been the individual who completed her online agreement. She testified that she had written down her LuxID password for Narciso earlier in 2018 giving him the ability to access her iGrow account. She explained that iGrow hosted training modules that employees were required to complete monthly. The system would sometimes fail to register when a training was completed and as a result would continue to show as incomplete on the back-end record. When this happened, Narciso would need to access Frade's iGrow account so he could manually process the training and mark it as complete.

3

Second, Luxottica failed to provide information as to how employees, and specifically Frade, were directed to the Employee Guide and informed of the requirement that they review and sign the agreement. While the witnesses mentioned the Hot Spot internal communication system on several occasions, none testified to whether Luxottica ever communicated a message announcing the Employee Guide across Hot Spot or elsewhere, or if employees were ever notified at all that this guide contained important information about employees' rights and required employees' signatures. The omission is notable where the agreement was rolled out approximately ten years after Frade had commenced her employment and not as part of her initial onboarding at Luxottica. Frade's testimony that she did not talk to anyone about the arbitration agreement was unrebutted, suggesting that Luxottica did not conduct any largescale roll out of the policy change or even notify their employees of the change beyond the task notification within iGrow. And finally, Narciso did not provide any insight into his role in rolling out the new policies, offering no testimony as to whether he signed his own agreement, informed his team about it, or monitored completion of the agreement by his subordinates.

And finally, the court finds it plausible, based on Narciso's testimony, that he signed Frade's agreement in a well-intentioned but misguided effort to clear the overdue paperwork from her task list. Narciso described himself as taking pride in helping his team, and doing a lot to show his appreciation for them, including buying them lunch and coffee with his own money. He also showed impatience with HR protocols, and conceded that he was "talked to" when there was a policy change requiring managers to clock in and out, rather than simply entering eight hours of work. His testimony supports the inference that he may well have made efforts to insulate his team from consequences for not timely completing what he viewed as extraneous administrative tasks that interfered with their work.

4

Here, Luxottica's records show that the agreement in Frade's account was executed one week after the October 19, 2018 completion deadline. It seems quite possible that Narciso saw Frade had the task outstanding, did not view it as a significant matter, and decided to submit it himself to ensure his full team had completed the task. Put another way, the evidence shows some support for Frade's suggestion that Narciso could have completed the Employee Guide task in Frade's iGrow account simply to get it done.

Accordingly, where Luxottica has the burden to establish that an enforceable agreement to arbitrate exists in this case and Luxottica has not shown that it is more likely than not that Frade rather than Narciso submitted the agreement, Luxottica has failed to meet its burden.

## III.   Conclusion

For the foregoing reasons, the court DENIES Luxottica's <u>Motion to Compel Arbitration</u> [Doc. No. 14]. The parties shall file a joint proposed scheduling order within two weeks of this order. The court will set a scheduling conference promptly.

IT IS SO ORDERED.

March 7, 2022                                      /s/ Indira Talwani
                                                   United States District Judge